Dominic Rostocki May it please the Court, my name is Dominic Rostocki. Counsel. I represent the appellant in this case, LeVon Butts. We were just saying that it was, if you wanted to know what we were talking about. It's a sad case. It is. You can't read it without thinking about it. The facts of the case, as Your Honors know, are rather simple and yet unnecessarily tragic. My client's, the deceased Mr. Butts, was walking towards the bathroom in Appellee's house when he took the wrong way in front of Appellee's, and we can tell that he confused the way to the bathroom. Is it clear that it was in front of the Appellee's? Because I thought it was his wife who testified. She wondered why he went that way, but she didn't stop him. Actually, it was the Appellee's wife. I'm sorry, one of the Appellee's, Ms. Weiss, in a call to insurance company, stated that she was unsure why Mr. Butts was traveling in that direction since the other direction was the quickest and most direct way to the bathroom. As I understood this, he must have gotten into the kitchen before he fell. Yes, Your Honor. Okay, and then he stepped down from the kitchen to what, like a landing? Your Honor, he proceeded through the kitchen, which was unlit, and thinking that the hallway bathroom was in that area, he stepped through. We don't know what he was thinking. Okay, all right, he steps into, we knew he was looking for the bathroom, and we also know that he went into the kitchen, which was unlit. And what did he then do? He walked through the kitchen and proceeded through a doorway,  As he stepped through that doorway, there was a single stair step-down, which both appellants and Appellee's experts agree is a dangerous condition, is unusual in all houses. Okay, so he now steps down one step. Eight-inch step. Yes, Your Honor. And he's now on a landing. Your Honor, he never completed that step. As he stepped down, we've all been in a situation where it's been dark and we've tried to step down from somewhere, not expecting that there was, you know, a lower area. He tripped and never completed that step and proceeded to fall down the stairs. You say not expecting, but he had been there, I think it says about four times, he had been walked through the property. Well, Your Honor, he had walked through the property previously that afternoon in lit conditions in a group while speaking with Appellee's and his wife. The conditions were completely different than when he went alone in unlit conditions at night and expecting that the bathroom was there. I thought he was there that day. He had gone through that area that day. Yes, Your Honor. Okay, so we're all in agreement it's tragic, but he's been through this area, obviously different lighting conditions, but he knows there's a step down, or we can infer that because he's been through there that day. There's no prior evidence of any forgetfulness or dementia or anything with regard to your client. No, Your Honor. The decedent, I'm sorry, not your client. No, Your Honor, there's no prior evidence of that. However, he was in a group when he was proceeding previously that day. He was speaking with Appellee's and he was speaking with his wife and may not have been paying attention to the step down, to everything exactly. He stepped down. Was there another doorway that he went down into the basement? Yes, Your Honor. So that doorway had to have been open for him to go through it. Yes, Your Honor. There was a pocket door, which is the type of door that slides into the wall. Oh, I see. That's cool. Okay, so that door, if that door had been closed, he obviously couldn't have fallen down the steps. Yes, Your Honor. It's also our contention if the lights had been on, he would not have fallen down the steps. So he steps down to the landing. We know he did that. And we also know that he then fell down the steps. Yes, Your Honor. Through the open pocket door. Yes, Your Honor. Okay, now, your expert said what about that kind of a condition? My expert, as well as Appellee's expert, said that that single-stair step-down is both unusual and dangerous. The appellant's expert went off and described exactly why and presented several scientific studies, a number of papers, research, as to why that is dangerous. Okay, now, if he kept going straight and he went on the landing, would he then go outside? Yes, Your Honor. Okay, but what did he do? He fell down to what would have been his left as he was moving to his right. As he was moving through the kitchen, the landing was on his right, and the steps were on the left side of that landing. Okay, so your argument is that it's a reasonable inference to think that we know he was looking for the bathroom, and your argument is that it's a reasonable inference to think that when you step onto this dark area, and it's an open area, that you fall because you don't see it and people stumble and they get out of the steps. Yes, Your Honor. In addition, there's no medical evidence of any other condition that he might have had where he may have had a heart attack or a stroke or something like that. Now, what's the negligence in the construction? Your Honor, the negligence is in allowing such a dangerous condition to exist. If the appellees had taken one of several steps, including, as Your Honor mentioned, closing the pocket door, turning the lights on, telling the decedent that he was going in the wrong direction, or going with him and making sure that he went in the right direction towards the bathroom, it would not have happened. Does the record tell us anything how common this type of construction is? Your Honor, appellant's expert does testify as to how common it is. Today, it's very uncommon. In the time that the house was built, which I believe was the 60s or the 70s, this type of single-stair step-down was fairly common. However, because of the research between the times, between then and now, that single-stair step-down is no longer as common. We're looking at what happened at the time. It's a step-down from the kitchen, but was it a step-up from the outside? Yes, Your Honor. What is your legal argument? In other words, what is the error that was committed in this case? Well, Your Honor. I mean, we don't reexamine the facts. What's your argument? Well, Your Honor, the appellant's argument is, well, in addition to what I've argued in the brief, there's two strong points that I'd like to make. It's what you argued in the brief that you're limited to. Yes, Your Honor. Yes. There's two strong points that I'd like to point out from the brief. First, that the district court ignored circumstantial evidence. Circumstantial evidence is not only— Well, and in doing what? Should the district court have found for you? Is that what you're saying? Your Honor, the district court should not have granted the appellee's motion for summary judgment, nor should it have granted the appellee's motion to limit the testimony of our expert. Yeah, I thought that the point of the appeal was that the district court didn't allow the expert to testify on his conclusion as to the cause of the fall, and that that's the basis of the appeal. Your Honor, that is— It allowed your expert to testify, but limited the expert— Is that right? Your Honor is correct that that's part of it. However, all of it has to do with circumstantial evidence. Well, would you really need the expert testimony for the cause of the fall? Because a jury can draw inferences, and in looking at it, a jury might draw an inference that he stepped down. It would never think that he jumped down the steps. At 84 years old. I mean, he didn't jump, or that he intentionally cast himself down the steps. So the jury would probably draw an inference he must not have seen the sliding door, the pocket door, as it's called, open and went down the steps. Yes, Your Honor. In fact, that's precisely Pellin's argument. I mean, does that require it? Now, I understand the expert on the construction, but does it require an expert on causation? Your Honor, it does—it's our position that it does not require an expert on causation. Oh, I'm sorry. So I thought that was the point of the appeal. Yeah, well, you argue that the expert should be allowed to give a causation theory. But what you're saying is that even if he couldn't, the jury could draw the inference. Well, the expert was permitted to testify as to the safety hazard of the single step, the inadequate nature of the lighting, the building codes, and how someone could trip over the stairs, right? Yes, Your Honor. Okay, so the only thing that the expert couldn't testify to was the cause. Yes, Your Honor. Okay. That's what I thought. Yes, Your Honor. That's where it comes from that the district court ignored the circumstantial evidence. So you're not arguing that you win this case. You're just arguing that you get a jury trial. Yes, Your Honor. Jury might— I had a jury trial. What? You haven't. No, no. You lost on summary judgment. Oh, summary judgment. Correct. So you're saying that this case should have never been taken away at the summary judgment. You should have completed discovery, whatever it was, whatever was necessary, and then tried the case. Correct, Your Honor. Okay, I think— That's all you want now. Correct. Let me ask you this. You're struggling with what the—or how the judge constricted Mr. Stevens. Is there any part of that that you argue was not speculative as the judge characterized it? The judge characterized his causation opinion as speculative. I argue and appellants argue that that was not speculative because it was based upon the circumstantial evidence that was present, which we've discussed some of it today. My argument is that simply his opinion was not speculative, and he should have been allowed to testify as well to causation. So if we do find it speculative, you would still press for the ability to have a jury trial? Yes, Your Honor. Okay, thank you. Thank you. Did you reserve time? I did. I apologize if I didn't state, so I reserved five minutes. Oh, five minutes. Is that too long? Well, five minutes? Okay, we should have been told because that's a long time. Okay, I can reduce that to three minutes. No, that's all right. Thank you. We like hearing from you. Good morning. My name is Leon Sherman. I'm the attorney for the appellees. I'd like to clarify a couple of things. The expert for the appellees did not agree that there was a tripping condition. In fact, in the record A-179, he specifically says there is no tripping hazard. That was your expert? Yes. This isn't about the negligence issue, which I'll get to in a moment, because we contend that even under the record as it is, we would have been entitled to a summary judgment based on there not being any negligence. But the first issue is causation. And the issue of the expert's report and the restriction that the court put on the expert is based on the fact that his opinion is pure conjecture. If you look at the cases that we've cited, Radcliffe and I think there were two others, Cuthbert, actually three others, Fedorsik and Newton, they all deal with the quantum of circumstantial evidence that an expert needs to have upon which to base an opinion. There's no evidence here upon which to base the opinion that any condition of the stairs caused him to fall. All we have is that he fell. I'm sorry, all we have is that he ended up at the bottom of the stairs. I accept the court's suggestion that he probably did not cast himself down the steps. But anything could have caused him to fall. They have not ruled out any medical conditions because, in fact, there's no autopsy. All they have is a person who went to the bathroom going in one of two alternative routes and ended up at the bottom of the steps. Well, is there any evidence in the record that there was a hazard, like, I'm sure there were no children in that house, like a child. No, no, there was nothing like that. You know, you could fall on a shoe. No, no. In fact, if you look at the cases that we cited, there were cases. One in Radcliffe involved a woman who ended up at the bottom of the steps, and they had great marks. They had other physical evidence that we don't have here, and the court said that was too speculative. But isn't it a reasonable inference that he went in there? I mean, you have to be an expert. He went in there. It was dark. He didn't see the entrance. And he just stepped down. Well, the problem with that, Your Honor, is that it's speculative. Anything could have caused him to fall. He could have tripped over his own feet. The fact that he fell does not prove that any condition caused his fall, and that's the problem with the expert's lead. But the way it was built, it was set up. No. It could happen. No, because there's no indication it was set up to cause people to trip. I disagree with that. No, they didn't set it up, say, well, this is great. It's like a landmine. We'll get them with a tax. No, no. But, I mean, it wasn't set up in that sense. But the way it was built, it could happen. Your Honor, any of these cases talk about conditions that are existing. You know, the example that they gave in, I think it was the Fedor case or the Radcliffe case, it was very interesting, was they said, let's take a set of steps, some of which are bad, some of which are good, and a person ends up falling down the steps. That doesn't prove that the bad steps caused the fall. So the problem that you have is the expert is giving the opinion without any predicate that makes sense. And the key word is reasonable. It's not a reasonable basis upon which to formulate his opinion. The court actually did this in two steps. What the court did was the court restricted his opinion to things that could have caused the fall. That she permitted. And then in the summary judgment phase, which was the second phase, she ruled that absent anything more in the way of evidence, he could not give that opinion. We submit to the court as well that even if the court were to reconsider that ruling, which I don't think it should do, the court also has to look at the record in terms of whether or not there's any evidence of negligence. The evidence of negligence is not merely the suggestion that there's a dangerous condition. These people were licensees, and so the duty to Mr. Butts would be to warn him of a condition that they have reason to believe he wouldn't discover. So even if you accept it for the sake of the summary judgment argument that there is evidence of a dangerous condition, you don't have any evidence that they had any reason to believe or expect that he would encounter it under the circumstances that he did. We cite Carinder v. Fitter and I think a couple of other cases that support the proposition that there was no violation of a duty here. So that even if the court were to agree that the expert's report was too circumscribed or his testimony was too circumscribed, and I want to mention I'm only making this argument in the alternative because I don't think that's the case, they still don't get past the summary judgment on the liability issue because there's no negligence. And the evidence is clear on that. They didn't violate, they had no duty to warn him, be careful of that landing because they had no reason to think he'd be on the landing? Well, not only that, the fact that he'd been through the house and been up and down those steps. In fact, one of the cases that we cite, I think it was Newton, was a case where a young man was taking care of his father upstairs at his stepmother's house or somewhere and he went up once or twice and came down and he fell claiming that the reason for his fall was because there wasn't a railing. Had he ever been in the house prior to that day? Prior to that day? I don't think so, Your Honor. It wasn't the whole point that he came by plane to see his friends in their new house? Absolutely. That's their point. It's true, you know, we're west of Delaware, but I know there's a New Jersey case. You're not necessarily negligent because you don't remember, contributory negligent because you don't remember everything. Well, we're talking here about the duty and there's no duty. That's the point I was making to the Court. Had no duty to. Was the kitchen unlit? No. There was lighting. It wasn't brightly lit. In fact, the argument that there was a dangerous condition because there was no light on the staircase, there was a light switch. Nobody put the light on because nobody expected him to be going down the steps. I mean, one of the things this expert made a big point about contending is that the lighting was inadequate. Well, of course, if the lights are out, it's inadequate. That's why you have light switches at night. If you had a kitchen floor that looked like it was going to cave in, you knew somebody was going to cross it, then you'd have a duty to warn them. That would be an example of a duty. Right. I mean, here we don't have a duty because we don't have a reason to expect him to be there, and he knew about the condition anyway in terms of walking up and down the steps. But that's the alternative argument. The point I want to focus on is the Court was correct in circumscribing the proof and therefore granting the summary judgment. What you're saying is that even if you consider the condition dangerous, I won't use the word negligent, the most they had a duty to be would be a duty to warn them if they thought it was going to be used. Yeah. Nowhere have reason to know that he would use it and not discover it. I mean, that's the rest of the restatement. Well, but he did say in a fashion, I'm going to the little boy's room or something like that. So they knew that he was on his way to the bathroom. Right. But the testimony is clear that he could have gotten to the bathroom the way he went. In other words, there were two ways to the bathroom. One was around that way and the other was the other way. So that saying he's going in that direction, saying he's going to the bathroom and saying he's going in that direction doesn't suggest that he's going down the steps. Wouldn't he have to have gone down the steps to get down there? I mean, how else could you get to the, I guess, the holding house? There's two paths around, and the path he could have gone to the bathroom would have gone past those steps, not turned into that area. How could, it wasn't on a level, maybe I don't understand. I'm looking at, I looked at the diagram and I still couldn't understand it. Was the powder room on the level below? No, I think the powder room was on the same floor, so he could have gotten there either way. It was on the same floor? Mm-hmm. Oh. So he could have gotten to the powder room either of two ways, and that's why going the way he did didn't alarm anybody because it was another way to go. But going the way he did, he still didn't have to go down to the landing. Absolutely. He shouldn't have gone to the landing because the landing could only take him to the basement or out. Well, I'm not positive of that. I don't know if that landing was the entire distance between the door. I don't know that. I'm not positive of that. But I do know that the landing that he supposedly, that had the tripping area, he wouldn't have gone down. He wouldn't have gone past there. He wouldn't have gone past that. Right. I mean, if he was going. He would have gone past it. If he knew where he was going, even if he took that other route, he shouldn't have gone down those steps. That's right. That's exactly right. I see. So the powder room was on the same level as the living room. Yes. From which he came. Yes. I didn't realize that. I see. I have a couple of other points, Your Honor, but they weren't argued. I don't know if they're. No, we don't limit you to that which he says. No, no, but I don't want to take the Court's time to make an argument that they don't seem to be pressing. My brief addresses their arguments anyway. So if the Court has no other questions, I'll just step down. Do you have any questions? No, I don't. Thank you. Thank you. It's a brief rebuttal. I'll try to keep it brief. Counsel mentioned the case of Fedorchik, which was a case that the lower court heavily relied upon. The difference between this case and Fedorchik was, in Fedorchik, there was literally no circumstantial evidence pointing to the fact that the plaintiff there encountered the dangerous condition that that dangerous condition caused him to fall. Here, as we've discussed today, there was ample circumstantial evidence. There was no reason for him to be there. It was dark. It was a dangerous step down, and he ended up at the bottom of the stairs. Another point would be that the way to the bathroom was much shorter the way that you were supposed to go, which was the other way. But you agree that either way you can get to the bathroom without going down on the landing and obviously down towards the steps? I would agree that you can get to the bathroom either way. However, the way he went, he would necessarily have to encounter the dangerous condition that was at issue here. And that's part of the negligence of the defendant. So he'd have to take one step down and then go back up? What do you mean encounter? No, Your Honor. The entire kitchen, while it was somewhat lit, it was night lighting. So it was a dark kitchen. I mean encounter is he would have to go near that dangerous condition or into it to go to the bathroom. So he wouldn't have to go down the landing in order to go either way to the bathroom. Is that right? Correct. Well, isn't that the problem? Counsel, this is an excellent argument, I have to say. It's really helpful. But the question here is this. The liability here has to come from a duty of some kind. He says, well, we haven't breached the duty just by having this property built this way. It's a failure to warn. Do you agree with that? I'm not okay with that. I'm sorry, the decedent in this case was a licensee on the property. Therefore, the appellees in this case had a duty, first of all, to warn and had a duty to make sure that he didn't encounter this dangerous condition that they knew or should have known was present in this house. Explain this duty to warn since he had walked on it and so he knew about it four times the record shows. So it wasn't that this was something that he encountered for the first time. I mean, that's within a space of hours he had been on. Why did they have to warn him about something that he had walked on just within a couple hours? Well, Your Honor, the conditions were completely different when he walked on it previously. As I said, he was in a group. He was speaking with everybody else. He may not have been paying attention to where he was walking. The group was four people. He was one, three at most. We don't know. Were all four there at the time when they did this little walkthrough? I believe so, Your Honor. But you only have a duty to warn if you think the person is going to be using the particular thing. Somebody could come into my house, and frankly I wouldn't warn them not to pull down the steps to the attic and go up there because there's all kinds of stuff laying there, but I wouldn't warn them of that because it wouldn't occur to me that they would do that. So, I mean, now I know that this is not that simple. I understand that. But that's the point. Why do you think they had to warn him? Why did they think he'd be on that landing? Because there was a chance. Your Honor, because they knew he was going in the wrong direction, first of all. But the wrong direction, though, can only be on one level to get to the same place. You just go around in a circle. It's not like, you know, it's not like, you know, it's not that long. Your Honor is correct that it was not the opposite direction. However, the direction that he took would take him near or through the dangerous condition. Whereas the opposite direction... It only took him near it. Ordinarily, if he was going that way, he would just walk right past it. He was right. Well, Your Honor, we contend that the dangerous condition was not just the step down. It was also the lack of lighting, which contributed to... You have light. There is light. It's not pitch black. You said there was no light. Was it a nightlight? It was a nightlight. I have nightlights all over my house. I can see. Correct. It was a nightlight. Both experts, however, have agreed in this case that the lighting was well below IESNA standards, which is the countrywide standard for lighting. Because nobody was in the spot. Correct. And the police knew that there was a lack of lighting in that area. It was below standard. Why would you put a light on in a room that you don't expect people to go into? Your Honor, they did expect him to go into it. They saw him going that way. All they had to do was walk over and flip the light up. So when you say below standard, what do you mean? No one's in a room. There's no standard for what light should be in that room. Well, they knew he was going into that room. Therefore, they should have known that there was a lack of lighting. So that's the duty. That's part of the duty. Not so clear that they knew he was going into that room. Your Honor, respectfully, I disagree. There were two ways to the bathroom. I apologize. That's right. And she wondered why he was going that way. But period. That's the extent of the evidence, right? Your Honor, correct. Okay. Okay. Thank you very much. Thank you. Have you argued before us before? I have not. This is my first time. Okay. Well, welcome. Thank you very much. Good job. Thank you.